## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES GRAHAM,** ) | |
| **307 Highview Dr.** ) | |
| **San Antonio, Texas 78228** ) | |
| ) | |
| **ELIZABETH WYMER,** ) | |
| **and NOAH B. KHOSHBIN,** ) | |
| **124 East Rische** ) | **Miscellaneous Action No._____** |
| **San Antonio, Texas 78204** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Underlying Case in the U.S. District** |
| **v.** ) | **Court for the Western District of Texas,** |
| ) | **Civil Action No. 5:15-CV-01054-XR** |
| **THE ASSOCIATION OF ZOOS** ) | **Assigned to: Honorable Xavier Rodriguez** |
| **AND AQUARIUMS,** ) | |
| **8403 Colesville Rd., Suite 710** ) | |
| **Silver Spring, MD 20910** ) | |
| ) | |
| **Defendant.** ) | |

### PLAINTIFFS' MOTION TO COMPEL THE ASSOCIATION OF ZOOS AND AQUARIUMS AND MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs James Graham, Elizabeth Wymer, and Noah Khoshbin (collectively "Plaintiffs") submit this Motion to Compel and Memorandum of Points and Authorities seeking to compel the Association of Zoos and Aquariums (the "AZA") to comply with a third-party subpoena to produce documents served on March 7, 2016 pursuant to Federal Rule of Civil Procedure 45(a)(1)(D).  For the reasons set forth below, Plaintiffs request that the Court order the AZA to provide the documents requested in Plaintiffs' subpoena.

### INTRODUCTION

Plaintiffs are seeking specific and discrete categories of information in the possession of third-party AZA that are relevant to Plaintiffs' claims, which are pending in the Western District of Texas, San Antonio Division.  Plaintiffs filed the underlying lawsuit on December 1, 2015

against Defendant San Antonio Zoological Society ("San Antonio Zoo" or "Zoo") under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–44.  *See Graham et al. v. San Antonio Zoological Society*, No. 5:15-CV-01054-XR (W.D. Tex.); Plaintiffs' Original Complaint, No. 5:15-cv-01054-XR, doc. 1 (W.D. Tex. Dec. 1, 2015), Ex. A.

The underlying lawsuit concerns the treatment and welfare of Lucky, a 56-year-old female Asian elephant currently held in an enclosure at the San Antonio Zoo.  Plaintiffs allege that the Zoo violates the ESA by causing physical and psychological harm to Lucky and disrupting her normal elephant behaviors.  Plaintiffs are currently engaged in discovery with the Zoo, seeking to obtain documents relating to the Zoo's care and treatment of Lucky.

As part of this discovery process, Plaintiffs have also served a subpoena on the non-party AZA pursuant to Federal Rule of Civil Procedure 45(a)(1)(D), requesting that it produce documents relevant to the Zoo's compliance with the zoo industry standards on the care, management, and treatment of elephants held in zoos.  The AZA has refused to provide those materials, claiming they are irrelevant to the merits of that litigation or otherwise protected by some "First Amendment" privilege that the AZA refused to support with citation to case law.  As demonstrated below, the information in the AZA's possession satisfies the test of relevance, and would not impose any undue burden on the AZA.  Accordingly, the AZA should be compelled to comply with the subpoena served on March 7, 2016.  As the subpoena requires compliance at a location in the District for the District of Columbia, Plaintiffs now file this Motion to Compel the AZA's compliance as a miscellaneous action in this District pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i).

## FACTUAL AND PROCEDURAL BACKGROUND[1]

I. **Plaintiffs' Claims Against the San Antonio Zoo under the Endangered Species Act.**

Plaintiffs brought the underlying lawsuit in the Western District of Texas under the ESA's citizen suit provision, 16 U.S.C. § 1540, which empowers "any person" to commence a civil suit to enjoin alleged violations of the ESA and grants jurisdiction to the district courts to hear such suits irrespective of the citizenship of the parties or the amount in controversy. Plaintiffs assert that the Zoo violates the ESA's prohibition on "taking" an endangered species under 16 U.S.C. § 1538(a)(1)(B) by "harming" and "harassing" Lucky, the endangered female Asian elephant currently housed at the Zoo.  Under the ESA, the term "harm" includes an act that "kills or injures" an endangered or threatened animal, while the term "harass" encompasses "an intentional or negligent act or omission which creates the likelihood of injury" to an endangered or threatened animal "by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."  50 C.F.R. § 17.3.  These prohibitions apply to both wild and captive endangered animals.  *See*, *e.g.*, 80 Fed. Reg. 7380, 7385 (Feb. 10, 2015) ("[T]he ESA does not allow for captive held animals to be assigned separate legal status from their wild counterparts on the basis of their captive status. . . . [C]aptive members of a listed species are also subject to the relevant provisions of section 9 of the ESA as warranted").

Specifically, the Zoo harms and harasses Lucky in violation of the ESA by keeping Lucky: (a) alone, without the companionship of any other Asian elephants; (b) in an enclosure that is too small; (c) with virtually no shelter from the sun; (d) with a pool that is of insufficient size for her to immerse herself and keep cool; and (e) on a hard, unnatural, species-inappropriate

---

[1] A more detailed factual background can be found in Plaintiffs' Original Complaint, attached as Exhibit A.  The parts relevant to this discovery dispute have been summarized here for the Court's convenience.

substrate.  Each of these conditions—which have existed for years at the Zoo—violates the ESA by continuing to cause Lucky great physical and psychological harm and significantly impairing Lucky's ability to engage in normal elephant behaviors.  Plaintiffs therefore seek declaratory and injunctive relief under the ESA, requesting that the Zoo either improve Lucky's enclosure to prevent further harm and harassment or relocate her to an elephant sanctuary that will meet her environmental and behavioral needs.

**II.**    **The AZA's Accreditation Process, Standards for Elephant Management and Care, and Issuance of Variances.**

The AZA is an association that, among other things, establishes voluntary standards for the care, welfare, and management of animals held in zoos and aquariums.  AZA, *Accreditation Standards and Related Policies*, https://www.aza.org/uploadedFiles/Accreditation/AZA-Accreditation-Standards.pdf (last visited June 1, 2016).  The AZA offers accreditation to zoos and aquariums that meet these standards.  As one of the benefits of receiving this accreditation, the AZA's website lists "public trust," elaborating that AZA accreditation:

- Develops public confidence by means that an institution meets or exceeds current professional standards;

- Provides a publicly recognized badge signifying excellence in, and commitment to, such things as animal care, conservation and education; and

- Distinguishes AZA-accredited zoos and aquariums from "roadside zoos."

AZA, *What is Accreditation?*, https://www.aza.org/what-is-accreditation/ (last visited June 1, 2016).  Therefore, while the AZA is not a governmental organization charged with implementing the ESA, it aims to set "professional standards" and promotes "excellence in, and commitment to, such things as animal care, conservation and education."  *Id.*  Further, the AZA's mission, as described on its website, states that the organization "provides its members with the services, high standards, best practices and program coordination to be leaders in animal welfare, public

engagement, and the conservation of species." AZA, *AZA Strategic Plan 2015-2017, Mission*, https://www.aza.org/StrategicPlan/ (last visited June 1, 2016).

The 2016 edition of the AZA's Accreditation Standards and Related Policies includes a distinct section outlining the "AZA Standards for Elephant Management and Care," ("AZA Elephant Standards") which, among other things, states that "[e]ach zoo holding elephants must hold a minimum of three females . . . (or the space to hold three females), two males or three elephants of mixed gender." AZA, *Accreditation Standards and Related Policies*, AZA Elephant Standard 2.2.1.1, at 36, https://www.aza.org/uploadedFiles/Accreditation/AZA-Accreditation-Standards.pdf (last visited June 1, 2016).

The AZA Elephant Standards then indicate that "[i]f a zoo cannot meet this standard, they must apply for a variance." *Id.* Before such a variance can be issued, "the zoo (a) must describe their plan to obtain additional elephants or describe their plan for transferring their elephants and (b) must describe what will occur if they experience the loss of one elephant." *Id.* Notably, the standard further states: "In most cases where an institution has one remaining elephant, the remaining elephant will receive a recommendation for relocation at another AZA institution from the Elephant TAG/SSP [Taxon Advisory Group & Species Survival Plan]." *Id.*

However, the AZA warns that the Elephant Standards are to be implemented by September 1, 2016, stating: "**By 1 September 2016**, no further variances will be issued." *Id.* (emphasis in original).

III.   <u>**The San Antonio Zoo's Variance on the AZA's Elephant Standards.**</u>

Upon information and belief, the San Antonio Zoo holds a variance on the AZA Elephant Standard 2.2.1.1, which excuses it from the requirement that it "hold a minimum of three females . . . (or the space to hold three females), two males or three elephants of mixed gender." AZA

5

Elephant Standard 2.2.1.1.  While the AZA Standards explain that **"[b]y 1 September 2016**, no further variances will be issued," the exact expiration date of the San Antonio Zoo's variance remains unknown.  The Zoo's plans either to comply with the AZA Elephant Standards at the expiration of its variance or to accept its failure to meet these standards likewise remain unknown.  Because a thorough understanding of these issues is critical to Plaintiffs' claims—and would be indispensable in reaching an early resolution of this dispute—Plaintiffs have served a subpoena on the AZA, requesting that it produce relevant documents on these matters.

**IV.**     **Plaintiffs' Subpoena on the AZA and the AZA's Response.**

Plaintiffs served a subpoena on the AZA on March 7, 2016, requesting that it produce materials relating to the San Antonio Zoo's requests for variances on the AZA Elephant Standards and the AZA's response to such requests at Dentons US LLP, c/o Melissa Gomez Nelson, 1900 K Street, NW, Washington, DC 20006, located in the District for the District of Columbia.[2]  *See* AZA Subpoena, Ex. B; AZA Subpoena Rider, Ex. C.  Specifically, Plaintiffs request documents and communications relating to:

1. the San Antonio Zoo's variances on the  AZA Elephant Standards, including all documents and communications relating to the reasons for the San Antonio Zoo's request for the variance currently set to expire in September of 2016 and the AZA's decision to issue the variance.

2. requests to extend the San Antonio Zoo's variance from the AZA Elephant Standards as to its Asian elephant exhibit past the variance's current expiration date of September 2016, including all documents and communications relating to the reasons for the San Antonio Zoo's request for any additional variance and the AZA's decision on whether or not to issue such variance.

3. the San Antonio Zoo's compliance with the AZA Elephant Standards with respect to its Asian elephant exhibit from 2006 to the present, including any materials relating to the AZA's annual inspections of the San Antonio Zoo's

---

[2] The specified location for the production of documents is within 100 miles of the AZA's headquarters, which are located at 8403 Colesville Road, Suite 710, Silver Spring, MD 20910.  The designated place of compliance with the subpoena therefore complies with Federal Rule of Civil Procedure 45(c)(2)(A).

Asian elephant exhibit.

4. the San Antonio Zoo's compliance with the AZA Elephant Standards specifically with respect to the husbandry, care, and management of its Asian elephant named Lucky from 2006 to the present.

5. the AZA's adoption of the AZA Elephant Standards, as revised in 2012, including but not limited to Standard 2.2.1.1, titled "Suggested age and sex structure of social group," for which the San Antonio Zoo has obtained a variance set to expire in September of 2016.

6. the San Antonio Zoo's Asian elephant habitat, including but not limited to emails, studies, or reports indicating the San Antonio Zoo's Asian elephant habitat is inadequate, problematic, or otherwise expressing concerns about that habitat.

7. the San Antonio Zoo's compliance with AZA accreditation standards with respect to its Asian elephant exhibit.

8. the San Antonio Zoo's compliance with AZA accreditation standards.

9. the AZA accreditation standards on elephant husbandry, care, and, including revisions, studies, or potential revisions thereof.[3]

Along with the subpoena, Plaintiffs sent the AZA a cover letter advising that a protective order would be entered in this litigation that would allow the AZA to designate any documents produced as confidential. *See* Subpoena Cover Letter, Ex. D. That protective order has now been entered in this case. *See* Order Granting Motion for Confidentiality and Protective Order, No. 5:15-cv-01054-XR, doc. 27 (W.D. Tex. Mar. 15, 2016), Ex. E.

In a letter dated March 21, 2016, the AZA objected to the requests and refused to produce *any* documents. *See* AZA Letter dated March 21, 2016 ("AZA Letter"), Ex. F. The AZA objects to the requests on the ground that they are "an unwarranted intrusion into the deliberative process of accreditation that is protected by both the deliberative privilege and constitutional

---

[3] This subpoena was served on Dennis W. Kelly, the Director and Chair-Elect of the AZA. Because Dennis W. Kelly's primary employment is with the National Zoo, located in Washington, D.C., he was served by personal delivery at that location on March 7, 2016. Having since then received a letter from the AZA's counsel, Mr. Jack Keeney, Jr., all future correspondence and courtesy copies of any subpoenas will be sent to him.

freedom of association of a private accrediting member organization." *Id*. at 1.  The AZA further objects that the timeline of the requests—2006 to the present—is too long and that the subpoena was improperly served on the AZA's director at that director's primary place of employment with the National Zoo.  *See id*. at 2-3.

In a letter dated April 5, 2016, Plaintiffs responded to the AZA's objections, contesting the AZA's misinterpretation of their requests, requesting authority and further elaboration on its objections, and inviting its counsel to confer by telephone in an effort to reach an agreement. *See* Plaintiffs' Letter dated April 5, 2016 ("Pls. Letter"), Ex. G.  Plaintiffs advised that they would like "to work with . . . the AZA to reach an agreement on the production of the documents to avoid the need and associated cost of seeking judicial intervention to compel the AZA's compliance with the subpoena." *Id*. at 1.  On the subject of the burden or cost placed on the AZA, Plaintiffs called upon the AZA to provide Plaintiffs "with specific information regarding the nature of that burden so that [they] can try to narrow [their] requests to address such issues" and noting that they "are also open to working with the AZA regarding any costs that would be incurred in producing documents responsive to [their] request." *Id*.  Plaintiffs also asked for "an estimate of the copying costs or e-discovery costs involved before incurring such costs," as well as authority for the AZA's claim of a deliberative privilege or First Amendment basis for its refusal to comply with the subpoena. *Id*.

In addition, Plaintiffs offered to "discuss limiting [their] requests or focusing on specific key locations to avoid any burden of a broader search for additional materials" and noted that they only request materials that "are relevant, non-burdensome to obtain, and properly subject to discovery in this litigation," and that they are therefore "not interested in extraneous materials that may be located only through broader and more time consuming searches."  *Id*. at 2.

Plaintiffs added that they "are open to limiting any request [the AZA] construed as requiring a broader search accordingly." *Id.*

Pursuant to Plaintiffs' request for a conference to discuss the subpoena, Plaintiffs conferred with AZA's counsel by telephone on April 15, 2016, focusing their discussion on the AZA's assertion of its First Amendment basis for objecting to the requests. To date, the AZA has not produced authority for its assertion of this objection and has likewise neglected to respond to Plaintiffs' requests to supplement and clarify the claims made in its March 21, 2016 letter.

As a result, following these repeated good-faith attempts to reach an agreement with the AZA on the materials requested, Plaintiffs now move to compel production of the relevant, necessary, non-burdensome, and proportionate requests made in their March 7, 2016 subpoena on the AZA.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties and governs motions to compel compliance with such subpoenas. *Watts v. S.E.C.*, 482 F.3d 501, 507–08 (D.C. Cir. 2007). Federal Rule of Civil Procedure 34 governs requests for production of documents and electronically stored information ("ESI") from a party and explains that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). Upon receiving objections to a subpoena, the serving party may move for an order compelling production after noticing the commanded party by filing a motion to compel in the court for the district where compliance is required. *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 219 (D.D.C. 2015); Fed. R. Civ. P. 45(d)(2)(B)(i).

In deciding whether to compel compliance with a subpoena, the court must consider whether the discovery sought is relevant. *In re Denture Cream Products Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013).   At the discovery stage, relevance is liberally construed and "is broadly interpreted to include information which is not admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Id*. at 123 (citations omitted).   Although a court may limit such discovery to prevent undue burden to third parties, an individual or entity seeking relief from compliance with a subpoena bears the burden of demonstrating that a subpoena should be modified or quashed. *Id.* at 123–24; *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (citations omitted).   "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances.   A court should be loath to quash a subpoena if other protection of less absolute character is possible." *Pension Benefit Guar. Corp.*, 301 F.R.D. at 25 (citation and quotation omitted).

## ARGUMENTS AND AUTHORITIES

### I.   Plaintiffs' Subpoena Requests Documents That Are Relevant to their ESA Claims and That Do Not Intrude on the AZA's First Amendment Rights.

#### A.   The San Antonio Zoo's Compliance with AZA Standards is Relevant to Plaintiffs' ESA Claims.

Plaintiffs' subpoena on the AZA requests documents and communications relating to the San Antonio Zoo's compliance with the AZA Elephant Standards.   These requests are highly relevant to Plaintiffs' ESA claims because they are expected to reflect the Zoo's ability to comply with industry standards on animal care and management—a matter that is relevant to determining whether the Zoo's treatment of Lucky causes her "harm" and "harassment" under the ESA.   The extent to which the San Antonio Zoo is able to comply with the animal welfare

standards set by the AZA, as well as the circumstances surrounding its requests for variances from these standards, reflect the conditions in which Lucky is held and the treatment she receives.  The conditions of Lucky's enclosure and the treatment she receives from the Zoo, in turn, are the very basis for Plaintiffs' claim that the Zoo does not care for Lucky in a manner that comports with the ESA.  The AZA's objection to the relevance of the requests is based on a misreading of Plaintiffs' claims and arguments.

Because the AZA holds itself out as "[p]rovid[ing] a publicly recognized badge signifying excellence in, and commitment to, such things as animal care, conservation and education," it sets the industry standards for animal care and management.  AZA, *What is Accreditation?*, https://www.aza.org/what-is-accreditation/ (last visited June 1, 2016).  The extent to which the San Antonio Zoo is able to comply with these industry standards is relevant to this lawsuit.  *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 75 (D.D.C. 2007) (concluding expert's methodology in reaching opinion on auditing and accounting processes was reliable and admissible, as it was based on a review of the Generally Accepted Accounting Principles "and other industry standards"); *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 348 (5th Cir. 1983) ("Industry custom is relevant in a strict liability case if it has any bearing on the condition of the product, which is the focus of a strict liability case."); *Soriano v. Treasure Chest Casino, Inc.*, No. CIV.A. 95-3945, 1996 WL 736965, at *1 (E.D. La. Dec. 23, 1996) (noting that expert's testimony on "industry standards of safety are relevant to the issue of fault . . . and are technical and industry knowledge that would assist the jury" in case involving plaintiff's fall on allegedly slippery carpet).[4]

---

[4] *See also Mack v. Talasek*, No. CIV.A. V-09-53, 2012 WL 1067398, at *8 (S.D. Tex. Mar. 28, 2012) (finding that industry custom on whether oilfield gate attendants were treated as independent contractors or employees, while not dispositive, "is nonetheless relevant and supports a finding the Plaintiffs were independent contractors" for purposes of Fair Labor Standards Act case); *Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. CIV.A. 12-1026, 2014 WL

Specifically, the circumstances surrounding the San Antonio Zoo's request for a variance as to the AZA Elephant Standards would reveal its justifications for its requests. The AZA's documents and communications in response to these variance requests would in turn reflect how the AZA perceived and reacted to the Zoo's justifications. This is highly relevant to Plaintiffs' claims because the Zoo has repeatedly defended its refusal to place Lucky with other elephants with the unsupported argument that Lucky is unlike other elephants and does not require the social interaction that Plaintiffs insist she needs. The Zoo's basis for requesting a variance on the number of elephants required to be housed together and the AZA's documents responding to this request would therefore address a significant point of contention between the parties.

Moreover, the AZA's documents and communications related to the San Antonio Zoo's request for a variance would offer greater context on industry standards and knowledge regarding the appropriate treatment of Asian elephants and the harm that an inadequate habitat can cause Asian elephants, and specifically Lucky. Such documents and communications would further show the extent to which the Zoo was permitted to deviate from industry standards and would demonstrate whether the Zoo was aware of its need for improvement. All these materials, in turn, would reflect the quality and level of care that the Zoo provides Lucky as compared with industry standards. And while a zoo's failure to comply with AZA standards does not automatically signal that an animal is harmed and harassed within the meaning of the ESA, it would be *relevant* to Plaintiffs' claim that the Zoo violates the ESA by failing to meet Lucky's

---

6090584, at *2 (E.D. La. Nov. 13, 2014) (allowing expert to testify as to the differences between the insurance policy quotation presented to the plaintiffs and the written insurance proposal they received "because whether the proposal meets industry standards is relevant and will aid the factfinder in its determination of this case."); *Boatland of Hous., Inc. v. Bailey*, 609 S.W.2d 743, 748 (Tex. 1980) (stating that in products liability cases based on negligence, "[e]vidence of industry customs at the time of manufacture may be offered by either party for the purpose of comparing the defendant's conduct with industry customs.").

health, environmental, and social needs.  *Carter*, 716 F.2d at 348 (explaining that "evidence need

not be dispositive of an issue to be relevant" (citing Fed. R. Evid. 401 advisory committee note)).

     **B.**     **Plaintiffs' Subpoena Does Not Intrude on the AZA's Deliberative Process or First Amendment Rights.**

     The AZA's objection to the subpoena on the ground that the requests burden the AZA's

deliberative process and First Amendment right of freedom of association is wholly unsupported

by facts or authority.  The AZA's failure to provide a foundation for this objection persists even

after Plaintiffs' April 5, 2016 letter requesting such authority and factual support.

     The AZA has articulated no basis for asserting the deliberative process privilege.   This

privilege "allows the government to withhold documents and other materials that would reveal

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *See In re Sealed Case*, 121 F.3d 729, 737

(D.C. Cir. 1997) (citations omitted).  This privilege is simply inapplicable to the present case.

The AZA is a private, non-governmental organization—a fact that the AZA has itself

acknowledged .  AZA Letter at 1 ("AZA accreditation standards are non governmental . . . .").  It

cannot now claim to benefit from the governmental privilege based on mere convenience.

     Nor has the AZA attempted to explain how the First Amendment privilege applies to this

case. The First Amendment privilege extends to prohibit "compelled disclosure of affiliation

with groups engaged in advocacy" when such disclosure would result in harassment of those

members and consequently "chill" their respective freedom of association.  *NAACP v. Alabama*,

357 U.S. 449, 460 (1958).  The privilege has been found to extend to "membership and volunteer

lists, contributor lists, and past political activities of plaintiffs and of those persons with whom

they have been affiliated."  *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002).

As Plaintiffs have explained in their April 5, 2016 letter, the subpoena does not seek information that may have an impact on the AZA's associational rights, as they do not request membership lists or information regarding any lobbying activity or strategies.  Plaintiffs only seek information regarding one member of the AZA, the Zoo, which the AZA has already admitted is a member of its organization.  AZA Letter at 1 ("AZA has 231 accredited members, including San Antonio (the defendant in Texas litigation about one animal).").  As such, Plaintiffs do not seek to compel any information regarding the association of the Zoo that the AZA has not already willingly released.

Even if the privilege does apply, however, Plaintiffs' limited requests regarding animal care standards do not infringe on the AZA's First Amendment rights.  In considering whether the First Amendment privilege applies, the court must engage in a "balancing inquiry" in which the producing party's "First Amendment claim should be measured against the [other party's] need for the information sought."  *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981).[5]

Plaintiffs' need for the information sought in its requests far exceeds any potential for harassment to the AZA's members.  As explained earlier, the information Plaintiffs request is relevant and crucial to proving its case against the Zoo.  Plaintiffs seek materials ***solely*** relating to the AZA's standards and its decision to issue the San Antonio Zoo a variance on these standards, and they make these requests only because such information is relevant to *industry*

---

[5] *Black Panther Party* was later invalidated on mootness grounds. However, this Court has found that "[e]ven though the *Black Panther* decision was later vacated as moot, there is no suggestion in later case law in this Circuit that its reasoning or analysis has been rejected or abandoned by our Court of Appeals. Indeed, it has been cited subsequently by the Circuit in a unanimous *per curiam* opinion in *Steffan v. Cheney,* 920 F.2d 74 (1990), as well as in many other cases from outside this Circuit." *Int'l Action Ctr.,* 207 F.R.D. at 3 n.6 (internal citations omitted). Therefore, the reasoning and analysis in *Black Panther* are plainly applicable to the present case.

*standards* governing the appropriate treatment of Asian elephants.  Furthermore, Plaintiffs can only obtain such information from the AZA.

On the other hand, producing this information to Plaintiffs would not result in any harassment to the AZA's members.  Through their claims against the San Antonio Zoo and their requests to the AZA, Plaintiffs do not attempt to question how the AZA sets its standards, how it applies its standards, or how it determines whether to grant a variance on these standards. Importantly, Plaintiffs have no intention of publicizing or disseminating this information and have informed the AZA of the availability of a protective order to safeguard confidential documents. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 n.6 (9th Cir. 2010) (while the assurance that private information will be narrowly rather than broadly disseminated is not dispositive, "[a] protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement."); *see also* Subpoena Cover Letter (informing the AZA that a protective order would be entered in this litigation that would allow the AZA to designate any documents produced as confidential).[6]  In light of Plaintiffs' need for the underlying information, and the protection that the protective order would afford the AZA, the AZA has not, and cannot, show that Plaintiffs' limited and specific requests would result in any public harassment of AZA's members.

In sum, neither privilege the AZA raised in response to Plaintiffs' subpoena is applicable to this case.  Accordingly, the Court should refuse to find that the deliberative process privilege or the First Amendment bars the production of the requested information.

---

[6]  As noted above, a protective order has now been entered in this case.  *See* Order Granting Motion for Confidentiality and Protective Order, No. 5:15-cv-01054-XR, doc. 27 (W.D. Tex. Mar. 15, 2016), Ex. E.

## II.    Plaintiffs' Requests are Necessary, Proportionate, and Non-Burdensome.

Plaintiffs request materials relating to the San Antonio Zoo's compliance with the AZA Elephant Standards and any variances it has received with respect to those standards between 2006 and the present.  *See* AZA Subpoena at 1–2.  The AZA objects to this time frame as being "too long."  AZA Letter at 2.  However, the AZA's objection is unfounded, as this time frame is essential to Plaintiffs' claims, and the requests are proportionate to the needs of the case and are non-burdensome.

First, the request is necessary and proportionate.  One of the issues in the litigation is the physical and psychological harm and harassment that Lucky faces as a result of being isolated and deprived of any Asian elephant companionship.  Indicative of the San Antonio Zoo's failure to provide her with the social companionship that elephants need is the fact that the Zoo does not comply with the AZA Elephant Standard requiring "[e]ach zoo holding elephants [to] hold a minimum of three females . . . (or the space to hold three females), two males or three elephants of mixed gender."  AZA Elephant Standard 2.2.1.1.  However, Plaintiffs' claim that this lack of companionship harms and harasses Lucky requires a *comparison* between Lucky's condition while living with various other elephants and her condition while kept alone in her enclosure.  A timeline of Lucky's varying levels of social interaction can only be drawn by examining documents from a time frame covering periods during which Lucky was housed with other elephants and periods during which she was kept alone.

Lucky has been isolated since Boo, the Asian elephant previously housed with Lucky, was euthanized by the Zoo in March of 2013.  Therefore, records dating back at least some period of time prior to Boo's death are necessary in this case.  Moreover, Lucky lacked any companion for a period of over two years after another elephant held in her enclosure—an

African elephant named Alport—died in 2007.  Records both before Alport's death and in the intervening time period are therefore also relevant to Plaintiffs' claims.  These specific facts are why Plaintiffs' time frame of 2006 to the present is proportionate and necessary to the claims in this case.  Limiting the requests to materials since Boo's death in March 2013, as the AZA proposes, would deprive Plaintiffs of the ability to trace how the Zoo formulated its justifications for depriving Lucky of Asian elephant companionship and would prevent Plaintiffs from assessing any changes in the San Antonio Zoo's awareness of Lucky's companionship needs.  As a result, documents relating to the San Antonio Zoo's compliance with AZA Elephant Standards both before and after losing a companion are central to Plaintiffs' claim.  Materials from 2006 to the present are thus not only relevant and proportionate, but also necessary.

Second, the request is non-burdensome.  The materials in question are in the possession and control of the AZA and would not be obtainable through discovery directed at the San Antonio Zoo, as it is the AZA that evaluates and enforces zoos' compliance with standards and that further decides on what basis to grant variances as to these standards.  *See S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000) (noting that it is sufficient for non-party to have "control" of materials, which is "construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand.").  The materials sought by Plaintiffs' requests are easily obtainable from specific files relating to the San Antonio Zoo's AZA submissions, and therefore the time frame of 2006 to the present would not impose any significant burden.

Plaintiffs ask that the AZA be compelled to produce the materials requested in the March 7, 2016 subpoena, as these requests are relevant, proportionate, and necessary to this case and do not place a burden on the AZA or infringe on its constitutional rights.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

Motion to Compel the AZA to produce the documents requested in Plaintiffs' third-party

subpoena on the AZA dated March 7, 2016.


Date: June 10, 2016                    Respectfully submitted,


                                       DENTONS US LLP


                                       /s/ Matthew A. Lafferman
                                       Matthew A. Lafferman
                                       D.C. Bar No. 1026794
                                       1900 K Street
                                       Washington, D.C. 20001
                                       Phone: (202) 496-7303
                                       Fax:    (202) 496-7756
                                       matthew.lafferman@dentons.com

                                       /s/Matthew T. Nickel (pro hac vice motion forthcoming)
                                       Matthew T. Nickel
                                       Texas Bar No. 24056042
                                       2000 McKinney Avenue, Suite 1900
                                       Dallas, Texas 75201
                                       Phone: (214) 259-0900
                                       Fax:    (214) 259-0910
                                       matt.nickel@dentons.com

                                       /s/ Blake J. Brownshadel
                                       Blake J. Brownshadel (pro hac vice motion forthcoming)
                                       Texas Bar No. 24073969
                                       2000 McKinney Avenue, Suite 1900
                                       Dallas, Texas 75201
                                       Phone: (214) 259-0900
                                       Fax:    (214) 259-0910
                                       blake.brownshadel@dentons.com

                                       **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 15, 2016, I conferred with Jack Keeney, Jr., counsel for the AZA, in an attempt to reach an agreement on the materials requested in Plaintiffs' subpoena on the AZA.   Although the parties engaged in meaningful discussion and revisited the disagreements noted in their respective letters regarding the subpoena, no agreement was reached.

*/s/ Blake Brownshadel*
Blake Brownshadel

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2016, a true and correct copy of the foregoing document was served upon the following by private process server:

Jack Keeney, Jr.
8403 Colesville Road, Suite 710
Silver Spring, MD 20910-3314
Phone: (301) 244.3361
Fax:    (301) 562.0888
jkeeney@aza.org

*General Counsel for the Association of Zoos & Aquariums*

I further certify that on June 10, 2016, a true and correct copy of the foregoing document was served upon the following via e-mail:

David P. Smith
Matthew Baumgartner
David A. King
Graves, Dougherty, Hearon & Moody
P.O. Box 98
Austin, TX 78767-9998
dsmith@gdhm.com
mbaumgartner@gdhm.com
dking@gdhm.com

*Attorneys for Defendant San Antonio Zoological Society*

/s/ *Matthew A. Lafferman*
Matthew A. Lafferman